Opinion
KEPPY, J.
Defendant was charged by information with grand theft, a violation of Penal Code section 487, subdivision 1. Defendant and all counsel waived a jury trial and the cause was submitted on the transcript of the preliminary hearing along with additional evidence and exhibits presented by the defense. Defendant was found guilty and a motion for a new trial was denied. The court ordered the defendant to undergo a 90-day observation period pursuant to section 1203.03, Penal Code. Following this period defendant was returned to the trial court, proceedings were suspended and probation granted. The appeal is from the order granting probation, deemed to be a final judgment. (Pen. Code, § 1237).
Defendant concedes that on a conflicting record there is substantial evidence to support the conviction of grand theft. His only contention on appeal is that the prosecution was collaterally estopped from presenting *334 the evidence which supports the verdict[1] by the findings and adjudication in a bankruptcy proceeding in federal court.
By the prosecution evidence the following was proved: that defendant, an equipment dealer, took a used fork lift valued at $10,900[2]
[3]on consignment to sell for Wilmington Lumber Company; that Gumming, who was in the lumber business, agreed to buy it on a nondown-payment basis for $12,000; that defendant secured financing for Gumming through U.M. & M. Credit Corporation; that defendant set up a conditional sale contract for $19,000 explaining to Gumming that the difference was a fictitious down payment included to make the contract look suitable to U.M. & M.; that it was customary in the vending of fork lifts for dealer-sellers like defendant to have clear title and for financing agencies like U.M. & M., when nothing was said, to assume that a seller had such title; that the U.M. & M. contract form used by the parties recited that defendant had title; that U.M. & M. delivered its check for $12,000 to defendant; that defendant, intending to defraud U.M. & M., did not turn the funds over to Wilmington, but deposited them in his account against which, known to defendant, there were large checks outstanding; that Gumming defaulted; that defendant, without himself letting U.M. & M. know, and urging Gumming not to let U.M. & M. know, took the fork lift back, made, but promptly failed to consummate an agreement to buy the fork lift from Wilmington himself, and then turned it back to Wilmington who, not knowing of U.M. & M.’s position, shipped it to its head office out of state; that through this maneuver defendant stole $12,500 from U.M. & M.
Defendant filed a voluntary bankruptcy proceeding. U.M. & M. was scheduled as a creditor. On March 29, 1967, at the first meeting of creditors, defendant was interrogated by counsel for U.M. & M. and Wilmington.[3] Defendant testified that he had the fork lift on consignment paper from Wilmington; that Gumming traded in a $2,500 lift truck as a down payment on the fork lift and signed a conditional sales contract with U.M. & M.;[4] **that U.M. & M. issued to him (defendant) a $12,000 check for the purchase balance; that he (defendant) deposited the check in his general account; that there were a lot of checks “bouncing” at that time. When defendant was asked if he was aware of this last circumstance, his attorney pointed to the possibility of incrimination. The referee said that defendant had to choose between answering and waiving his discharge. *335 The attorney cautioned his client concerning the possibility of self-incrimination, told him that he, himself, would have to make the election, but advised him to answer. Defendant proceeded to do so and said there were large checks out. When asked if they about equaled the deposit, defendant replied that it was “in the books.” The referee observed that if counsel wished to “delve,” the proceeding could be continued so that they could examine the books and put themselves in a position to ask “coherent” questions. Counsel then desisted. The record does not show if the books were examined and more questions asked. Defendant further testified in the bankruptcy proceeding that at no time did he inform U.M. & M. of Wilmington’s interest and that he never had authorization from U.M. & M. to pick up the fork lift.
The criminal complaint (which led to the instant trial) was issued against defendant. After a preliminary hearing he was bound over to superior court for trial on an information filed January 2, 1968.
On January 24„ 1968, a hearing of the bankruptcy trustee’s objections to discharge was conducted. Our record consists only of the referee’s findings and conclusions and the Order of Discharge of Bankrupt. The findings indicate that the objection to discharge had to do with defendant’s maintenance of business records such as sequential invoices. The court found that defendant had kept sufficient books of account from which his financial condition and business transactions might be ascertained (11 U.S.C. § 32(c)(2)), and that the objectors had failed to prove business record inadequacy. From those findings the court concluded that there had been no offense or acts committed by defendant which would bar his discharge; that defendant had met the burden of countering the Specification of Objections to Discharge; and that he had satisfactorily explained all matters in connection with the objections.
The necessary affinity of interest which would lead the interrogators at the bankruptcy session to adequately substitute for the nonparticipating People (the practical type of privity which was found to exist in People v. One 1964 Chevrolet, 274 Cal.App.2d 720 [79 Cal.Rptr. 447]) is not present here.[5]
Counsel for U.M. & M. and Wilmington did not have the same position or incentive in the bankruptcy proceeding as did the People in the criminal *336 action. The interest of a creditor is to get what money he can. Preventing the discharge of the bankrupt by showing the making of false written statements respecting financial condition most likely would not aid the creditor in this respect. Letting the bankrupt get a fresh start by means of his discharge might in the long run be more advantageous to the creditor. Obviously the interest of the prosecution was not a monetary one, but a moral one pursued on behalf of all of the people.
Equally as important, the issue of false representation by defendant on the security agreement was not adjudicated or even litigated in the bankruptcy proceeding.
There is nothing in the record to indicate that a ground of objection was that defendant had committed an offense punishable under 18 United States Code, section 152 (making of false account in relation to- a bankruptcy proceeding)[6] (11 U.S.C. § 32(c) (1)); or was that defendant had obtained money or property on credit for his business by making a false statement in writing respecting the financial condition of his business (the false assertion of ownership of the fork lift in the conditional sale contract, might have been such (11 U.S.C. § 32(c) (3)).
Apparently the interrogation of defendant by counsel for U.M. & M. and Wilmington on the subject of the basis for his possession of the fork lift, the conditional contract, and the disposition of the funds received Was never pursued. So no intra-bankruptcy proceeding ensued on this subject and no adjudication was made with respect to it. The People should not be precluded from prosecuting defendant for that because U.M. & M. failed to file and press what might have been an appropriate objection to the discharge. Thus, no collateral estoppel of a reverse nature to that found in Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439] (prior criminal conviction binding in later civil action) could pertain.
The decision of In re Bailleaux, 47 Cal.2d 258 [302 P.2d 801], cited by defendant is of no comfort to him because in that case the Adult Authority of California was party to both the earlier Washington State decision by which the subject’s probation had been terminated and the later proceeding in which it was sought to revoke probation despite the earlier ruling of termination.
The judgment (order granting probation) is affirmed.
Kaus, P. J., and Stephens, J., concurred.
Appellant’s petition for a hearing by the Supreme Court was denied October 1, 1970.

At the outset of the trial defendant made a motion to bar the admission of all evidence to be offered by the People.

This and other amounts are given in round figures approximating the actual.

The standing of Wilmington, which apparently was not a listed creditor, as an interrogator is not made clear.

Defendant was not asked if he had signed the conditional sale contract.

In People v. One 1964 Chevrolet where the conviction of a son for possession of marijuana in his father’s car was held to have established the issue of knowledge in the succeeding vehicle forfeiture suit, the law that the entruster is held accountable for the entrustee’s knowledge created the close relationship and the son in the criminal action had the incentive and opportunity to adequately represent the father’s interest as a prospective defendant in a forfeiture suit.

As the Attorney General suggests, this does not seem to be pertinent.